UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

GEORGE W. POPE,                    )       CIVIL ACTION NO.: 4:04-23013-MBS-TER
                                   )
              Plaintiff,           )
                                   )
       v.                          )       REPORT AND RECOMMENDATION
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
_____Defendant._____)

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" by the Commissioner of

Social Security ("Commissioner/defendant") denying his claims for Disability Insurance Benefits

(DIB)and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 401-433, 1381-1383c, respectively. The only issues before the Court are whether the

findings of fact are supported by substantial evidence and whether proper legal standards have been

applied. This case was referred to the undersigned for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

Plaintiff, George W. Pope, applied for SSI on February 8, 2001, and DIB on November 5,

2001, due to an accident which resulted in back and leg pain, arthritis, and "nerve" problems (Tr. 13,

430, 152). His applications were denied initially and on reconsideration (Tr. 96-99). Plaintiff timely

requested a hearing before an Administrative Law Judge (ALJ) on June 6, 2002 (Tr. 451). A hearing

was held on February 26, 2003, before ALJ Ronald C. Dickinson (Tr. 57-92). In a decision dated July 29, 2003, the ALJ found plaintiff retained the residual functional capacity (RFC) to perform a significant range of light work and, thus, was not disabled (Tr. 96-106). On September 22, 2003, the Appeals Council remanded the case to the ALJ for further administrative proceedings (Tr. 135-38). After a subsequent hearing was held on March 16, 2004 (Tr. 32-56), the ALJ issued a decision dated July 24, 2004, in which he found plaintiff retained the RFC to perform simple, unskilled, light work which involved lifting and carrying 10 pounds frequently and 20 pounds occasionally; no crawling, crouching, climbing, squatting, or kneeling; no use of his lower extremities for pushing or pulling; and a sit/stand option and, thus, was not disabled (Tr. 10-28). The Appeals Council denied plaintiff's request for review of the ALJ's July 2, 2004, decision (Tr. 5-7), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

The plaintiff was born on April 18, 1954, (Tr.430) and was 50 years of age at time of the ALJ's decision.  He has a high school education and prior work experience as a tractor-trailor truck driver (Tr. 153, 158).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)       The ALJ erred in failing to give proper weight to the opinions of the plaintiff's treating physicians.

    (2)       The ALJ erred in failing to give adequate consideration to the plaintiff's subjective complaints of pain and to the effects of narcotic pain medication upon the plaintiff.

2

(Plaintiff's brief).

In the decision of July 2, 2004, the ALJ found  the following:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's acute and chronic low back pain, hypertension, major depression, and Post Traumatic Stress disorder are considered "severe" in combination based on the requirements in the Regulations 20 CFR §§404.1520(c) and 416.920(b).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not fully credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity to perform light, simple, unskilled work with restrictions.

7.    The claimant is unable to perform any of his past relevant work (20 CFR §§404.1565 and 416.965).

8.    The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963)

9.    The claimant has a "high school education" (20 CFR §§404.1564 and 416.964).

10.    The claimant has no transferable skills from any past relevant work (20 CFR  §§ 404.1568 and 416.968).

11.    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and

3

416.967).

12.   Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as: a parking lot attendant (This is light, unskilled work with 116,000 jobs existing in the national economy); a storage facility clerk (This is light, unskilled work with 227,000 jobs existing in the national economy); or a carton packer (This is light, unskilled work with 275,000 jobs existing in the national economy).

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 27).


## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. Neither party set out the medical records in detail in their memorandum, the ALJ set forth the medical evidence in detail in the body of his decision. (Tr. 14-20).

On June 19, 2001, N. L. Morris, M.D., examined plaintiff and found that he had a "very remarkable physical examination, except for the fact that he was quite well muscled and showed no atrophy and he demonstrated full range of motion and passive manipulation." Dr. Morris noted that, although plaintiff's chief complaints were back pain, arthritis, and leg problems, those complaints "were not too striking and were not substantiated very much by [the] physical exam, which appeared to be normal, and Dr. Morris placed no restrictions on plaintiff's activities (Tr. 181-182).

On August 16, 2001, plaintiff was examined by Al B. Harley, Jr., M.D., PhD, at the request

of the Disability Determination Division.  Dr. Harley found no evidence of confusion or delusions or bizarreness and did not see any significant evidence of confusion, certainly no psychosis.  From a general psychiatric standpoint, Dr. Harley saw him as moderately impaired in his ability to relate to others, moderately restricted in his daily activities, moderately constricted in his thought processes and he thought plaintiff would be able to handle his own monthly benefit payments in his own best interest (Tr.183-185).

On March 14, 2002, Elizabeth A. Dickinson, M.D., examined plaintiff and also found no significant physical findings.  Plaintiff's examination at that time revealed normal muscle bulk in the upper and lower extremities, with no spasms or flaccidity; normal fine and gross motor dexterity bilaterally; full range of motion of the hips; no involuntary muscle spasms in any of the paraspinous muscles or trapezius muscles; negative straight leg raising test bilaterally; normal gait and station; intact cranial nerves two through twelve; 2+ deep tendon reflexes; and an intact sensory examination (Tr. 209-211).

On August 13, 2001, a Psychiatric Review Technique was done by Donald W. Hinnant, Ph.D.  Examination revealed there was a mild restriction of activities of daily living, mild difficulty in maintaining social functioning, mild difficulty concentrating, and some indication of decompensation (Tr. 213-232).

A Mental Residual Functional Capacity Assessment was done by a DDS physician on April 2, 2002, and revealed that plaintiff was not limited to understanding and memory, not limited to sustained concentration and persistence, not limited significantly to social interaction and could adapt pretty well to others in the work place (Tr. 231-250).

An examination performed at the VA on April 15, 2003, revealed a normal range of motion

of his lower extremities, mild tenderness in the lumbar sacral spine, normal muscle bulk and tone, 2+ reflexes on the right leg and 3+ on the left leg, intact sensation, no swelling or discoloration of the lower extremities, and a positive straight leg raising test only on the left and again, no restrictions were placed on plaintiff's activities (Tr. 354-360).

In June 2003, Frank Castillion, M.D., recommended surgery based on plaintiff's May 2003, MRI; however, plaintiff refused surgery and opted for conservative treatment (Tr. 404).

In February 2004, plaintiff had surgery which consisted of a laminectomy at L3, L4, and L5.

## V. ARGUMENTS

Plaintiff first asserts that the ALJ erred in failing to give proper weight to the opinions of the plaintiff's treating physicians, Drs. Gibbs and Hooks. Plaintiff argues that Dr. Hooks completed a "Medical Assessment to do Work Related Activities" form on March 11, 2003, indicating that plaintiff experiences severe back pain on lifting 5 pounds, an exacerbation of lumbar pain upon standing and walking for longer than 15 minutes without interruption, and acute lumbar pain if he sits for longer than 15 minutes without interruption. Dr. Hooks indicated that pushing and pulling severely exacerbates plaintiff's back pain and if done for any length of time, cold temperatures and vibration increase his back pain and he has a limited range of motion in his back, which makes it unsafe for him to work at heights. Dr. Hooks also concluded that plaintiff's ability to concentrate or perform desk work is severely impaired due to his chronic pain. Dr. Hooks wrote a letter dated March 11, 2003, in which she states that plaintiff's medical records reveal that plaintiff has been disabled since June 1, 1997. Plaintiff further contends that his psychiatrist, Dr. Gary Gibbs, opined that he has major depression, auditory hallucinations, and post traumatic stress disorder. Dr. Gibbs

6

opined that plaintiff is totally and permanently disabled. (Plaintiff's memorandum p. 5, Tr. 251). Plaintiff argues that the ALJ erred in his determination that the opinions of Drs. Hooks and Gibbs are unsupported by objective medical evidence in the record.

In rebuttal, defendant asserts that the ALJ properly considered Drs. Gibbs and Hooks opinions but properly discounted them and declined to give them controlling weight. Defendant argues that Dr. Gibbs' May 2002 opinion of disability was not supported by his own progress notes. For example, defendant contends that in September 2001, Dr. Gibbs noted that Xanax was calming plaintiff down and that Paxil was helping his symptoms. In March 2001, and September 2000, Dr. Gibbs' progress notes indicated plaintiff was not having as many PTSD features and was hearing voices only every now and then. Dr. Gibbs' opinion was inconsistent with treatment notes from the VA dated March 2003 which found plaintiff's medication was effective and plaintiff only had moderate limitations. Further, defendant asserts that Dr. Harley' opined in August 2001, that plaintiff was only moderately impaired. As to Dr. Hooks' opinion of disability, defendant argues that the findings and opinions of examining physicians, Drs. Morris and Dickinson, were inconsistent with her findings in that they found no significant or abnormal functional limitations from plaintiff's complaints. Defendant argues that "Although Plaintiff argues at page six of his brief that he was diagnosed with a central disk herniation in November 2001, and May 2003, which was substantial evidence to support Dr. Hooks' disability opinion . . .   the evidence simply did not support such a finding for a durational period." (Memorandum p. 9).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record.  20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)

(although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").  Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight.  In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account.  Id.  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390.  Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively  v. Heckler, 739 F.2d at 989.

The undersigned  finds there is substantial evidence in the medical record to support the ALJ's decision and that the ALJ did not err in the amount of weight he placed on the evidence of the plaintiff's treating and examining physicians. The ALJ's decision reveals that the ALJ discussed the physician's opinions and reached the following finding with regard to this issue:

8

The undersigned rejects Dr. Gibbs' and Dr. Hooks' opinions that the claimant is not capable of performing any work. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding, in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, there are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

More importantly, these doctors' opinion are without substantial support from the other evidence of record, which obviously renders them less persuasive. While her own examinations fail to place restrictions on the claimant's physical activity, Dr. Hooks limits the claimant to less than a full range  of sedentary work in her Medical Assessment to Do Work-Related Activities. In contrast, Dr. Dickinson and Dr. Morris' examinations note that their physical examinations did not substantiate the claimant's alleged physical impairments.

Similarly, while Dr. Gibbs' treatment notes detail little more than the claimant's reports that he continued to experience nightmares and occasional auditory hallucinations, he opines that the claimant is totally and permanently disabled. In contrast more recent mental health treatment notes from the Department of Veteran's Affairs Mental Health Clinic fail to document any restriction the claimant's mental impairments have on his activities.

It appears that both of these doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

With regard to the claimant's mental capacity, I considered all relevant evidence to obtain a longitudinal picture of the claimant's overall degree of functional limitation. In so doing, I considered all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's

functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medications, and other treatment. I have rated the degree of the claimant's functional limitation based on the extent to which his impairments interfere with his ability to function independently, appropriately, effectively, and on a sustained basis. Thus, I considered such factors as the quality and level of the claimant's overall functional performance, any episodic limitations, the amount of supervision or assistance the claimant requires, and the setting in which she is able to function.

I find, based upon a close review of the medical evidence, that there is a medically documented persistence, either continuous or intermittent, of major depression and Post-Traumatic Stress disorder. These syndromes have resulted in the claimant having: mild restrictions in his activities of daily living; mild limitations in his social functioning; moderate deficiencies of his concentration, persistence, or pace, and there have been no episodes of decompensation of an extended duration. Additionally, there is no evidence to suggest that the claimant is unable to function outside of a highly supportive living situation. As previously mentioned, due to his moderate limitations in her concentration, persistence, or pace, the claimant is further limited to performing unskilled work.

(Tr. 22-23).

Based on the above, the undersigned finds that the ALJ fully set forth his reasoning and there is substantial evidence to support the weight he placed on the doctor's statements. In March 2002, Dr. Dickinson examined plaintiff and found normal muscle bulk in the upper and lower extremities, no spasms, full range of motion in the hips, no involuntary muscle spasms in any of the paraspinous muscles or trapezius muscles, negative straight leg raises, normal gait and station. Dr. Morris had examined plaintiff in June 2001, and found full range of motion to passive manipulation, no joint abnormalities, deep tendon reflexes, and neurological exam was normal. In his report, Dr. Morris states that "I noted that in the examination room the patient moved slowly and somewhat awkward, but this was not seen entering the waiting room and he does not have any evidence of muscle

tenderness, etc . . . " Dr. Morris further stated that "I do not see any real evidence of arthritis on physical examination nor on observation. I do think that he probably will need continued treatment for mental disorders, as he gives a history compatible with hallucinations. His history is also is suspicious of chronic lumbar sprain, but nothing else and he definitely does not have any overt joint findings or abnormalities." (Tr. 182). Therefore, there is subjective contradictory evidence to support the ALJ's decision.

Next, plaintiff asserts that the ALJ erred in failing to give adequate consideration to the plaintiff's subjective complaints of pain and to the effects of narcotic pain medication upon the plaintiff. Plaintiff asserts that the ALJ failed to address the effect of his back symptoms would have upon him in the context of his residual functional capacity. Plaintiff also contends that the ALJ failed to consider the effects of the many pain medications that plaintiff takes. Plaintiff asserts that he testified during the March 16, 2004, hearing that when he takes his medication it makes him drowsy.

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4)

11

and 416.929(c)(4).

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJs in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects . . .*

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

> . . .

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that

12

"the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

An ALJ's duty to make credibility findings about the plaintiff's statements about pain in a mental impairment case is just as important as in one alleging a physical impairment. See, e.g., Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). A reviewing court cannot determine if findings are supported by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (remand required based on failure to indicate weight given to medical reports). The Fourth Circuit has recognized that it is especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

[i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and therefore sometimes makes negative determinations--about allegations of pain or other nonexertional disabilities . . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

The ALJ cited numerous reasons for finding that plaintiff's credibility was not without question. For instance, the ALJ concluded that:

At the most recent hearing, the claimant testified that he had back surgery in February. He reported that his upper back pain has improved since the surgery, but now his legs hurt even when lying

13

down. He also reported that his legs will give way on him. The claimant estimated that he could walk the length of a football field if he could stop and rest in between. He estimated that his prior physician advised him no[t] to lift more than 15 pounds, and his most recent physician advised him not to lift more than a gallon of milk. Mr. Pope reported suffering from arthritis all over his body. He has problems with strength in his hands. He also  reported that his medications make him drowsy.

The claimant testified at the 2003 hearing that he last worked as a tractor-trailer driver in 1990. He reported pain in his back and legs, along with arthritis all over his body. He is unable to sit or stand for long periods of time. He reported being unable to do things around the house secondary to pain. He also described emotional problems after a truck accident in 1990. The claimant suffers from nightmares. He estimated that he could stand for 5-10 minutes. He uses a cane which was prescribed by the Department of Veteran's Affairs Medical Center. He described a typical day as: waking up and kneeling to pray, taking a hot shower, eating a sandwich, going for a walk if the weather is nice, and reading some. He testified that he is unable to get down on the floor and play with his grandchildren. He states that he can read something and then does not remember what he read.

The undersigned finds that the claimant's testimony is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

There have been inconsistencies in the claimant's representations regarding his daily activities. For example, in June 2001, the claimant reported that he was unable to perform household chores and his mother cooks for him. In contrast, the claimant reported in March 2002, that he is able to perform household chores, cook some, and attends church 2-3 times a month. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistences suggest that the information provided by the claimant generally may not be entirely reliable.

The claimant has described daily activities, including performing household chores, cooking on occasion, walking, attending church 2-3 times a month, reading, and visiting with friends, which are not

limited to the extent one would expect, given his complaints of disabling symptoms and limitations.

Although the claimant has described daily activities which are fairly limited, two facts weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in vew of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

The claimant has been prescribed and has taken appropriate medications for the alleged mental impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Specifically, the claimant admitted in April, May, and October 2001, and February 2002, that he was doing fine as long as he took his medications. (Exhibits 5F, 11F, 13F). Further, in March 2003, the claimant was assigned a Global Assessment Functioning score of 52, indicating moderate symptoms or moderate difficulty in social, occupational or school functioning.

The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were actually disabled. Specifically, although the claimant complains of arthritis, there is little to no documentation of this in the medical record. In fact, after performing her consultative physical examination, Dr. Dickinson reported that there was no evidence of arthritic changes. Physical examination revealed normal muscle bulk and strength. Dr. Morris' consultative examination in June 2001, also concluded that the claimant's arthritis was not substantiated by his physical examination.

Dr. Dickinson's report from the consultative physical examination reflects that the claimant did not specify any particular complaint, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date.

There is evidence that the claimant was less than fully cooperative or

15

put forth less than maximal effort during examinations. Specifically, Dr. Dickinson reported that musculoskeletal examination was difficult because the claimant resisted range of motion in all of his joints passively and refused to move them actively and expressed diffuse tenderness everywhere she touched.

There is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. . . .

The claimant did undergo surgery for his low back pain, which certainly suggests that his back symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. Specifically, only a few days following the surgery, the claimant rated his pain as a "1" on a scale of 1 to 10 and was able to ambulate with a walker.

. . . Having considered all of the above, the undersigned finds that the claimant's allegations of a total inability to work are exaggerated and unsupported by the medical evidence.

With regard to the claimant's mental capacity, I considered all relevant evidence to obtain a longitudinal picture of the claimant's overall degree of functional limitation. In so doing, I considered all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medications, and other treatment . . .

. . . As previously mentioned, due to his moderate limitations in [his] concentration, persistence, or pace, the claimant is further limited to performing unskilled work.

(Tr. 20-23).

There is substantial evidence to support the ALJ's decision as to plaintiff's allegations as to his impairments and the effect of the medication. The ALJ properly considered the inconsistencies between plaintiff's testimony and other evidence of record in evaluating the credibility of plaintiff's

16

subjective complaints.

Based on the above, the ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations.  The ALJ adequately addressed each complaint, as discussed, and explained his evaluation. As to plaintiff's assertion that the ALJ did not take into account the side effects of the medication, the ALJ noted that plaintiff testified that the medication makes him drowsy. The ALJ noted that he took into account the medications. Further, in deciding plaintiff's degree of functional limitation, the ALJ found moderate limitation in concentration, persistence or pace and limited plaintiff to performing unskilled work. Therefore, the undersigned concludes that there is substantial evidence to support the ALJ's determination as to plaintiff's complaints of pain and his credibility based on the objective medical evidence. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude him from the demands of all work.

The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, 739 F.2d at 989.  Therefore, it is concluded that there is substantial evidence to support the decision of the ALJ in this case.

## VI.  CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner

17

be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 14, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

18

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied,* Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied,* 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
